UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| VANESSA G. LIPSCOMB-MORGAN, *et al.*, | * |
| | * |
| Plaintiffs, | * |
| | CASE NO: 07-CV-2846 |
| v. | * |
| AAMES FUNDING CORPORATION, d/b/a AAMES HOME LOAN, *et al.*, | * |
| | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 105, Defendant Aames Funding Corporation d/b/a AAMES Home Loan ("Aames"), by and through its undersigned counsel, submits this memorandum of law in support of its motion for summary judgment on the claims asserted by Plaintiffs Vanessa G. Lipscomb-Morgan and Dennis Morgan.

**<u>INTRODUCTION</u>**

Plaintiffs Vanessa G. Lipscomb-Morgan and Dennis Morgan have sued Aames claiming that one or more of its employees made certain misrepresentations concerning the terms of their refinanced mortgage loan. Notwithstanding this claim, the undisputed, material facts demonstrate that Plaintiffs knew and were aware of all of the material loan terms about which they now complain. They knew that the interest rate on the Aames loan would be higher than the rate on their then-existing loan. They knew that their monthly payment on the Aames loan would be higher than what they were paying at the time. And, they knew that the Aames loan did not provide an escrow for taxes and insurance like their prior

loan.  Aware of these differences, Plaintiffs signed the loan documents, closed on the loan, and accepted $28,846.20 in loan proceeds, which they later spent on vacations, shopping, home improvements, and general expenses.

Fast forward fifteen months.  Facing the threat of foreclosure, Plaintiffs initiated this action against Aames and others, asserting claims for violating Maryland's Consumer Protection Act, constructive fraud, and negligent misrepresentation.[1]  According to the complaint, these purported claims arise from the origination of Plaintiffs' refinanced mortgage loan with Aames and their subsequent failed attempt to cancel the transaction.  Plaintiffs' complaint represents nothing more than a thinly veiled attempt to stave off foreclosure and remain in their house as long as possible for free.  This action was filed only *after* co-defendant Ocwen Loan Servicing, LLC ("Ocwen") initiated foreclosure proceedings in its capacity as the servicer of Plaintiffs' loan.  At that time, Plaintiffs were approximately nine months behind on their mortgage, having previously made the first six monthly payments and then stopping because Mr. Morgan's income decreased substantially as a result of a change in jobs.  Since then, Plaintiffs have not made a single payment, yet continue to live in the house.

Aames now moves for summary judgment on the merits of Plaintiff's claims.  Discovery is complete, and based on the material facts as to which there is no dispute, Plaintiffs' claims fail on the merits.  The discussion below focuses upon (i) Plaintiffs' knowledge of the loan terms; (ii) Plaintiffs' failed attempt to rescind the transaction and subsequent waiver; and (iii) the applicable law.

---

[1] Plaintiffs asserted these same claims against the Aames' employee with whom they dealt, but those claims have since been dismissed by the Court for want of prosecution pursuant to Fed. R. Civ. P. 4(m) and Local Rule 103.8(a).  Plaintiffs also sued Ocwen Loan Servicing, LLC, which remains a party to the litigation.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

In early July 2006, a representative of Aames contacted Plaintiffs via telephone to offer the Plaintiffs the opportunity to refinance their mortgage. Deposition of Vanessa G. Lipscomb-Morgan ("Lipscomb-Morgan Depo."), at 56:21-58:5, attached hereto as Exhibit 1. Plaintiffs were not initially interested, but after several telephone conversations with Aames' representatives, they decided to refinance the existing mortgage on their property located at 5732 Joan Lane in Temple Hills, Maryland. *Id.* at 58:18-71:21.

This was not the first time Plaintiffs' refinanced their mortgage loan. They are experienced in this area; having refinanced on three (3) prior occasions over a period of less than eight (8) years. Deposition of Dennis Morgan ("Morgan Depo."), at 14:18-23:18, attached hereto as Exhibit 2. On each occasion, Plaintiffs took equity out of their property and used the cash proceeds to purchase automobiles and pay for vacations, clothes, home improvements, bills, and general living expenses. *Id.* at 16:6-16:15; 18:1-18:17; 29:5-34:3. The refinanced loan offered by Aames presented Plaintiffs with the same opportunity.

The Aames loan closed on July 25, 2006. *See* Ex. 1, Lipscomb-Morgan Depo. at 108:10-111:2; 114:10-115:11; 124:15-132:17, and loan documents attached hereto as Exhibit 3.[2] On that date, the settlement officer met with Plaintiffs at their house to review the loan and obtain Plaintiffs' signatures on the loan documents. Ex. 2, Morgan Depo. at 34:12-35:21. Plaintiffs assert that the loan terms presented at closing were different from what they believed had previously been presented by an Aames representative over the telephone. For example, Plaintiffs believe that they discussed with Aames a 30-

---

[2] Exhibit 3 is comprised of one adjustable rate note (Ex. 3-1), one fixed-rate note (Ex. 3-2), two deeds of trust (Exs. 3-3 & 3-4), and two escrow impound account acknowledgements (Exs. 3-5 & 3-6), all signed by Plaintiffs.

1051333.2 30617/104230 04/20/2009

year fixed rate mortgage that included an escrow for taxes and insurance.  Ex. 1, Lipscomb-Morgan Depo. at 68:3-68:18.  However, the loan presented at closing was an 80-20 loan, i.e., a first mortgage and a second mortgage, neither of which included an escrow for taxes and insurance.  Ex. 2, Morgan Depo. at 35:5-38:9.  Upon being apprised of this difference at closing, Plaintiffs made a call to Bryan McDonald (the assistant branch manager of Aames' Maryland office at the time).  *Id.*  Plaintiffs discussed the new terms with Mr. McDonald and, following the conversation, decided to proceed with the refinancing.  *Id.*

Plaintiffs acknowledge that they were aware of the interest rate and the monthly payment of the Aames loan and were further aware that the Aames loan did not include an escrow for taxes and insurance.  Ex. 2, Morgan Depo. at 35:5-38:8; 60:14-61:10; 75:9-77:9.  They had all of this information prior to signing any of the loan documents because it was explained to them and/or set forth in the loan documents.  *Id.* at 35:5-38:8; 60:14-62:3, Ex. 1, Lipscomb-Morgan Depo. at 124:19-126:14; 128:19-129:20; 130:14-131:3.  Also prior to signing the loan documents, Plaintiffs admit that they had the opportunity to read the loan documents, but chose not to do so.  *Id.*

On July 27, 2006, two days after loan closing, Plaintiffs apparently had second thoughts about the transaction and tried to cancel the loan by faxing a "Notice of Right to Cancel" to Aames' Maryland office, notwithstanding the explicit written instruction to send such notice elsewhere.  Ex. 1, Lipscomb-Morgan Depo. at 116:2-121:14; Ex. 2, Morgan Depo. at 62:16-62:22; and Notices of Right to Cancel with fax cover sheet, attached hereto as Exhibit 4.  The Notice of Right to Cancel clearly and expressly instructed Plaintiffs to send the notice to the following address should they want to cancel the loan:

> AAMES FUNDING CORPORATION
> Attn:  Funding Manager
> 3347 Michelson Drive
> Irvine, CA 92612

Ex. 4, Notices of Right to Cancel. No other address for Aames appears anywhere on the "Notice of Right to Cancel. *Id.* Plaintiffs acknowledge the instructions provided in the Notice of Right to Cancel and readily admit that they made no attempt to send the notice to Aames at the designated place of business. *See* Ex. 1, Lipscomb-Morgan Depo. at 141:20-142:1; Ex. 2, Morgan Depo. at 65:20-67:12. Instead, they faxed the notice to Aames' Maryland office. *See* Ex. 4, Notices of Right to Cancel.

Having ignored Aames' instructions in the Notice of Right to Cancel, Plaintiffs' attempt to rescind the transaction failed and the loan was funded. Plaintiffs received a check in the amount of $28,846.20, representing their portion of the loan proceeds. Ex. 2, Morgan Depo. at 44:4-44:21. Plaintiffs deposited the check and promptly proceeded to spend all of the proceeds on vacations, "a lot of shopping," certificates of deposit, home improvements, and general expenses. *Id.* at 30:1-34:3. Plaintiffs also made regular monthly payments on the Aames loan, albeit for only the first six months. *Id.* at 72:1-72:6. According to Mr. Morgan, he changed his job approximately six months after the Aames loan closed and as a result of the change in jobs, his income decreased to a point where Plaintiffs could no longer afford the monthly payments. Ex. 2, Morgan Depo. at 72:7-72:15. Mr. Morgan confirmed that the change in compensation caused by his change in jobs was the only reason Plaintiffs stopped making their monthly mortgage payment. *Id.*

On October 2, 2006, the servicing rights of Plaintiffs' loan were transferred from Aames to Ocwen Loan Servicing, LLC ("Ocwen"). *See* Exhibit 2 to Plaintiffs Complaint. Approximately one year later, Ocwen initiated foreclosure proceedings because Plaintiffs failed to make mortgage payments for approximately nine months. *See* Exhibit 3 to Plaintiffs' Complaint, and Exhibit C to Ocwen's Motion for Partial Summary Judgment. A foreclosure sale was scheduled for September 27, 2007. Plaintiffs' Complaint, ¶ 28. A mere eight days before the sale, Plaintiffs initiated this action and

successfully stalled foreclosure.  Since then, Plaintiffs have not made a single mortgage payment, yet continue to occupy the mortgaged property.[3]  Ex. 1, Lipscomb-Morgan Depo. at 156:10-157:9; Ex. 2, Morgan Depo. at 8:3-9:1.

## STANDARD FOR GRANTING SUMMARY JUDGMENT

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citations omitted).  Therefore, summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original).  This Court should "view the evidence in the light most favorable

---

[3] Mr. and Mrs. Morgan separated in September 2008 and since then, only Mr. Morgan continues to reside at the property.  *See* Ex. 2, Morgan Depo. at 8:3-9:1.

6

to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). In doing so, this Court must be mindful of the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).

"The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th 1988). The court has an obligation to ensure that factually unsupported claims and defenses do not go to trial. *See Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex,* 477 U.S. at 317).

## ARGUMENT

**I.     Because Plaintiffs Were Aware Of All Of The Loan Terms About Which They Now Complain, Their Claims Under The Maryland Consumer Protection Act And For Constructive Fraud And Negligent Misrepresentation Fail As A Matter Of Law.**

Counts I (violation of the Consumer Protection Act), II (Constructive Fraud) and III (Negligence Misrepresentation) of the complaint are all premised on the allegation that Aames misrepresented certain information concerning the terms of the loan to Plaintiffs. Discovery taken in this case confirms that this allegation is without factual support. Plaintiffs were aware of the terms of the loan, had the opportunity to review the loan documents (but chose not to), and discussed the terms of the loan with an Aames representative, all prior to signing the loan documents. *See, e.g.,* Ex. 2, Morgan Depo. at 35:5-38:8; 60:14-61:10; 75:9-77:9. Accordingly, to the extent Plaintiffs' misrepresentation claims are based

on the terms of the loan, which they knew before closing on the transaction, those claims fail as a matter of law.

Much of the same can be said for Plaintiffs' claim arising from their unsuccessful attempt to rescind the loan transaction. Plaintiffs had the right to cancel by virtue of the nature of the transaction, but failed to effectively exercise that right. Plaintiffs then waived the right when they subsequently accepted the loan proceeds and began making regular monthly payments.

Count II (Constructive Fraud) presents a further obstacle for Plaintiffs. A claim for constructive fraud requires Aames to owe a special duty to Plaintiffs based on a confidential or fiduciary relationship. Because no such relationship exist between the parties, there is no special duty owed by Aames to Plaintiffs to support the claim.

### A.      Plaintiffs knew and were aware of the terms of the Aames loan.

Plaintiffs allege that Aames misrepresented that the offered loan would benefit them and that they relied on that representation when they agreed to refinance their mortgage loan. According to Plaintiffs, this statement was not true because the Aames loan had a higher rate of interest and a higher monthly payment than their existing mortgage and did not include an escrow for taxes or insurance like their existing mortgage. Complaint, ¶ 13; Ex. 1, Lipscomb-Morgan Depo. at 16:3-17:13. While the terms of the Aames loan may have been different than Plaintiffs' existing mortgage, these terms were disclosed to Plaintiffs prior to Plaintiffs signing the loan documents and consummating the transaction. Ex. 2, Morgan Depo. at 35:5-38:8; 60:14-61:10; 75:9-77:9. According to Mr. Morgan, the settlement officer explained all of the loan terms to Plaintiffs prior to them signing the documents, including the fact that the loan did not provide for the escrow of taxes and insurance. *Id.* at 36:17-38:8. After having the terms explained to them, Plaintiffs made the decision to follow through with the transaction and to

8

sign the loan documents. *Id.* Based on these undisputed facts, Plaintiffs cannot now rely on the difference in loan terms to support their misrepresentation claims. *Id.*; *see Holloman v. Circuit City Stores, Inc.*, 391 Md. 580, 595, 894 A.2d 547, 556 (2006) (recognizing as a general premise under Maryland law that "a party who signs a contract is presumed to have read and understood its terms and as such will be bound by its execution"); *Koons Ford of Baltimore, Inc. v. Lobach*, 398 Md. 38, 46, 919 A.2d 722, 727 (2007) (same); *Walther v. Sovereign Bank*, 386 Md. 412, 444, 872 A.2d 735, 754 (2005) ("[i]f petitioners did not [read the agreement] before they signed the agreement, they have no person to blame but themselves.").

At the end of the day, there is no genuine dispute that Plaintiffs had free will and made their own independent decision to enter into the loan with full knowledge of the terms of the loan. *See* Ex. 1, Lipscomb-Morgan Depo. at 124:19-126:14; 128:19-129:20; 130:14-131:3; Ex. 2, Morgan Depo. at 35:5-38:8; 60:14-61:10; 75:9-77:9. The benefit to Plaintiffs was the opportunity to pull more equity out of their home – something that they have repeatedly done over the years. *See* Ex. 2, Morgan Depo. at 14:18-23:18. In fact, as a result of this transaction, Plaintiffs received more than $28,000 in loan proceeds, which they promptly spent on vacations, "a lot of shopping," certificates of deposit, home improvements, and general expenses. *Id.* at 30:1-34:3; 71:13-71:22.

      **B.**       **Plaintiffs did not effectively exercise their right to cancel.**

            1.       *Plaintiffs' Failed to Comply With Regulations Governing Rescission.*

Plaintiffs contend that Aames misrepresented that Plaintiffs could rescind the loan within 3 days of executing the settlement documents. This contention is ostensibly based on a document titled "Notice of Right to Cancel" which was included in the set of loan documents that were presented and signed by

Plaintiffs at closing.  *See, e.g.,* Ex. 4, Notices of Right to Cancel.  Aames provided Plaintiffs with this notice as required by the Truth in Lending Act:

> the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, ***by notifying the creditor, in accordance with regulations of the Board*** [of Governors of the Federal Reserve System], of his intention to do so.

15 U.S.C. § 1635(a) (emphasis added).  Upon providing this notice, it is the borrower's responsibility – here Plaintiffs - to notify Aames of the intention to cancel in accordance with the regulations of the Board.  *Id.*  The regulations of the Board are found in Regulation Z, codified at 12 C.F.R. 226.23, "Right of Rescission," and provide that:

> To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication.  Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when ***delivered to the creditor's designated place of business***.

12 C.F.R. 226.23(a)(2) (emphasis added).

The Notice of Right to Cancel provided to Plaintiff clearly stated that Plaintiffs may cancel the transaction within 3 days after the date of the transaction by notifying Aames in writing and sending such notice to:

> AAMES FUNDING CORPORATION
> Attn:  Funding Manager
> 3347 Michelson Drive
> Irvine, CA 92612

Ex. 4, Notices of Right to Cancel.  Plaintiffs acknowledge that they did not send the notice to Aames' "designated place of business" – to have done so, they were required to send notice to Aames' California office as clearly indicated on the Notice of Right to Cancel.  *Id.*  Instead, Plaintiffs chose to send their

10

notice to Aames' Maryland office.  See Ex. 1, Lipscomb-Morgan Depo. at 141:20-142:1; Ex. 2, Morgan Depo. at 65:20-67:12.  The failure to follow the instructions on the Notice of Right to Cancel renders Plaintiffs' attempted rescission a nullity.

The United States Court of Appeals for the Tenth Circuit upheld summary judgment in favor of the lender based on facts that are strikingly similar to those presented here.  *See Ameriquest Mortgage Co. v. Hernandez*, No. 03-5111, 84 Fed. Appx. 21, 2003 U.S. App. LEXIS 24942 (10th Cir. December 11, 2003) (unpublished).  In *Ameriquest*, the borrower was aware of the three day right to cancel, attempted to call the lender and allegedly spoke with the lender's representative, and mailed a letter of cancellation to the lender at an address different from the address provided in the Notice of Right to Cancel.  84 Fed. Appx. at 22.  Subsequently, the loan was funded, proceeds were disbursed, and the borrower made several payments before defaulting on the loan.  *Id.*  The district court found that the lender had properly informed the borrower of his right to rescind in accordance with federal regulations, and that the borrower had failed to file a rescission properly by the stated deadline.  *Id.*, at 23.

      2.    *Waiver*

Even if this Court were to reach a different conclusion than the Tenth Circuit did in *Ameriquest*, Plaintiffs' misrepresentation claim based on the right to cancel would still fail.  As discussed *supra*, Plaintiffs accepted the loan proceeds, paid off their prior mortgage, and received more than $28,000 in cash.  This all occurred after Plaintiffs allegedly rescinded the loan transaction.  Plaintiffs then went on to spend all of the $28,000 in proceeds and began to make regular mortgage payments.  Such conduct constitutes a waiver of any prior attempt to rescind.

Waiver "is an intentional and voluntary relinquishment of a known right."  *From the Heart Church Ministries, Inc. v. Philadelphia-Baltimore Annual Conference*, 184 Md. App. 11, 48, 964 A.2d

11

215, 237 (2009) (citing *Myers v. Kahoe*, 391 Md. 108, 205, 892 A.2d 520, 530-31 (2006)). Furthermore, as the Maryland Court of Appeals stated in *Taylor v. Mandel*, 402 Md. 109, 135-36, 935 A.2d 671, 686-87 (2007):

> Waiver rests upon the intention of the party . . . and therefore, acts relied upon as constituting waiver must unequivocally demonstrate that waiver is intended. The right or advantage waived must be known; [t]he general rule is that there can be no waiver unless the person against whom the waiver is claimed had full knowledge of his rights, and of facts which will enable him to take effectual action for the enforcement of such rights.

(Citations omitted) (Quotations omitted). In this case, Plaintiffs had full knowledge of their right to rescind the loan transaction. Plaintiffs waived that right, however, when they accepted the loan proceeds after the closing and after they attempted to rescind the transaction. This argument is further supported by the undisputed fact that Plaintiffs made their first six regular monthly mortgage payments and only stopped making payment because of a decrease in income caused by a change in employment by Mr. Morgan. Without a change in employment, Plaintiffs would still be paying on the mortgage and likely would have never filed this lawsuit. *See* Ex. 2, Morgan Depo. at 72:7-72:15.

## II   Plaintiffs' Claim For Constructive Fraud Fails Because Of The Absence Of A Confidential Or Fiducairy Relationship Between The Parties.

To state a cause for constructive fraud as alleged in Count II, there must be a predicate confidential or fiduciary relationship between the parties. *Steigerwald v. Bradley*, 136 F.Supp.2d 460, 467 (D. Md. 2001); *Ellerin v. Fairfax Sav., F.S.B.*, 337 Md. 216, 236 n.11, 652 A.2d 1117, 1126 n.11 (1995). Here, no such relationship exists between Aames and Plaintiffs. Rather, the relationship between a lender (Aames) and a borrower (Plaintiffs) in a loan transaction is a debtor/creditor relationship based upon contract, and is not fiduciary in nature. *Steigerwald*, 136 F.Supp.2d at 468; *see also Kuechler v. Peoples Bank*, 2009 WL 636125, at *7 (D. Md. 2009); *Parker v. Columbia Bank*, 91

Md. App. 346, 604 A.2d 521, 532 (1992); *Yousef v. Trustbank Savs., F.S.B.*, 81 Md. App. 527, 568 A.2d 1134, 1138 (1990).  Accordingly, absent the predicate relationship between parties, Plaintiffs' claim for constructive fraud fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Aames respectfully asks this Court to grant its motion and enter judgment as a matter of law in its favor and against Plaintiffs on all counts in the complaint.

Respectfully submitted,

/s/
Brian L. Moffet
Fed. Bar No. 13821
GORDON, FEINBLATT, ROTHMAN,
 HOFFBERGER & HOLLANDER, LLC
233 East Redwood Street
Baltimore, Maryland  21202-3332
Telephone No.: 410/576 - 4291
Fax No.: 410/576 – 4246
Email: bmoffet@gfrlaw.com

Attorneys for Defendant Aames Funding
Corporation d/b/a Aames Home Loan